592 A.2d 808

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 3, 1990.

Decided June 3, 1991.

Vincent J. Walsh, Jr., for petitioner.

David A. Salapa, for respondent.

Trent Hargrove, for intervenor, Dept. of Transp.

Thomas D. Rees, for intervenor, Township of Upper Merion.

Before PALLADINO and PELLEGRINI, JJ., and NARICK, Senior Judge.

PELLEGRINI, Judge.

This is a petition for review in the nature of an appeal by the Southeastern Pennsylvania Transportation Authority (SEPTA) from two related orders of the Pennsylvania Public Utility Commission (Commission) at Docket No. I–870067.

In 1987, the Commission commenced an investigation pertaining to the maintenance of an overhead highway bridge in Upper Merion Township, Montgomery County. The bridge carries Church Road, an Upper Merion Township (Township) road, over electrified tracks owned by SEPTA. Following the investigation, the Commission adopted an

order on its own motion imposing maintenance responsibility for the bridge's superstructures on the Township [1] and imposing interim maintenance responsibility for the bridge's substructures on SEPTA. [2]

On February 15, 1989, SEPTA filed a motion to modify the Commission's 1987 order, contending that the work involved in repairing the Church Road Bridge's substructures amounted to more than maintenance because of damage caused by sinkhole activity in the vicinity of the crossing. The Commission referred SEPTA's motion to an Administrative Law Judge (ALJ). On September 5, 1989, the ALJ issued a Recommended Decision denying SEPTA's motion and recommending that SEPTA be permanently responsible for maintaining the bridge's substructures. The ALJ then allowed 20 days for the parties to file exceptions to the Recommended Decision.

On September 26, 1989, SEPTA filed its exceptions to the Recommended Decision. In its exceptions, SEPTA contended that the Commission's maintenance allocations was burdensome because of the sinkhole activity, that SEPTA is exempt from maintenance assessments imposed by the Commission, and that because SEPTA is not a "public utility" as defined in 66 Pa.C.S. § 102 but a "Commonwealth agency" as defined in Section 303 of the Pennsylvania Urban Mass Transportation Law, Act of January 22, 1968, P.L. 42, (PUMTL), *as amended*, added by Section 3 of the Act of July 10, 1980, P.L. 427, 55 P.S. § 600.303(a) it is immune from maintenance assessments. The Commission, however, informed SEPTA that because SEPTA's exceptions to the Recommended Decision were received on September 26, 1989, SEPTA's exceptions were untimely filed. On October 6, 1989, SEPTA filed a petition to have its

1. Upper Merion Township was to furnish all material and work to maintain the bridge superstructures, including parapet railings, roadway paving, drainage, and snow and ice removal.

2. SEPTA was to furnish all material and work to maintain the bridge substructures, including all abutments and crossing facilities. In addition, SEPTA was required to report any unsafe conditions involving subsidence.

exceptions accepted as timely filed, arguing that 52 Pa.Code § 1.56(b) extends the filing deadline for exceptions by three days.

On December 21, 1989, the Commission issued the two orders which are the subject of this appeal. The first order, entered January 19, 1990, adopted the ALJ's Recommended Decision without reference to SEPTA's exceptions. The opinion attached to that order states that because of safety considerations for motor vehicles and the volume of train traffic at the crossing, it is fair and reasonable to continue the maintenance allocations established in 1968.

The second Commission order, entered January 30, 1990, rejected SEPTA's petition to have its exceptions accepted as timely filed. The Commission determined that because the filing period runs on the date a decision is issued, SEPTA's exceptions were filed one day late. The Commission also determined that SEPTA waived the issue of the applicability of the exemption from taxes and assessments because SEPTA raised that issue for the first time in its untimely filed exceptions. SEPTA's petition for review of both Commission orders by this Court followed. The Township, as well as the Pennsylvania Department of Transportation, have intervened in support of the PUC's decision.

■ Our scope of review in Public Utility Commission cases is limited to a determination of whether constitutional rights have been violated, an error of law has been committed, or the Commission's findings and conclusions are or are not supported by substantial evidence. *Vacation Charters, Ltd. v. Pennsylvania Public Utility Commission*, 133 Pa.Commonwealth Ct. 179, 575 A.2d 640 (1990).

■ The threshold issue in this appeal is whether SEPTA's exceptions to the Recommended Decision were improperly refused by the Commission because of untimeliness. SEPTA contends that the Commission misinterpreted the regulations regarding the filing of exceptions,[3] and that a

3. Whenever a document is required to be filed, it is deemed filed on the date received, on the date deposited with an overnight delivery

proper reading of the regulations, particularly Section 1.56(b), would reveal that SEPTA had actually filed its exceptions two days early instead of one day late.

Section 1.56(b) provides that "[u]nless otherwise prescribed by the Commission or presiding officer, whenever a participant is required or permitted to do an act within the prescribed period after service of a document upon him and the document is served by mail, three days shall be added to the prescribed period." A close reading of the provision leads us to the conclusion that the first clause of the provision, "unless otherwise prescribed ..." refers to the third clause, "three days shall be added to the prescribed period." Under this interpretation, therefore, the three-day extension is applicable whenever a participant is required or permitted to do an act within the prescribed period *unless* the Commission or presiding officer prescribes that the extension does not apply to a particular case.

In the present appeal, SEPTA was permitted to file exceptions within 20 days from the date of issuance of the Recommended Decision. Neither the ALJ nor the Commission, however, prescribed that the three-day extension set forth in Section 1.56(b) would not apply if SEPTA decided to file exceptions. Accordingly, three days were automatically added to the 20–day filing period. Because SEPTA actually had 23 days to file its exceptions, that is, by September 28, 1989, and because SEPTA filed its exceptions on September 26, 1989, we conclude that SEPTA's exceptions were timely filed.

service or on the date deposited in the U.S. Mail when accompanied by United States Postal Service Form 3817 attached to the document. 52 Pa.Code § 1.11.

The Commission contends that Section 5.533 rather than Section 1.56(b) controls in the present case. Section 5.533(a) provides: "In a proceeding, exceptions may be filed by a participant and served within 20 days after the initial, tentative or recommended decision is issued unless some other exception period is provided...." The Commission, therefore, argues that the period for filing exceptions ran from the date the ALJ's decision was *issued* and not from the date the decision was *served* upon SEPTA.

As to the merits, SEPTA's position is that it is exempt from maintenance responsibilities imposed by the Commission. Initially, SEPTA contends that because it is a Commonwealth agency and not a "public utility," it is immune from the Commission's authority to assess maintenance costs. Alternatively, SEPTA contends that it is exempt from maintenance assessments because its statutory exemption from all assessments under Section 342 of the PUMTL, 55 P.S. § 600.342, is consonant with federal law which grants the National Railroad Passenger Corporation (Amtrak),[4] Amtrak Commuter Service Corporation (Amtrak Commuter),[5] and other "commuter authorities"[6] a broad exemption from all "taxes and other fees." In support of its contention, SEPTA cites *National Railroad Passenger Corp. v. Commonwealth of Pennsylvania, Public Utility Commission*, 665 F.Supp. 402 (E.D.Pa.1987), *aff'd.*, 848 F.2d 436 (3d Cir.1988), *cert. denied*, 488 U.S. 893, 109 S.Ct. 231, 102 L.Ed.2d 220 (1988) (*Amtrak I*) and *National Railroad Passenger Corp. v. Commonwealth of Pennsylvania, Public Utility Commission*, 1991 WL 998 (No. 86–5357, filed January 3, 1991) (*Amtrak II*).

■ While we would ordinarily remand these issues back to the PUC for resolution because of our finding that the exceptions were timely filed, we have extensively analyzed both of these issues in *Southeastern Pennsylvania Transportation Authority v. Pennsylvania Public Utility Commission*, 140 Pa. Commonwealth Ct. 270, 592 A.2d 797 (1991) which held that SEPTA is a "public utility" and that it is not exempt from Commission-ordered maintenance assessments under either the PUMTL or 45 U.S.C. § 581(c)(5). Because we have decided both those issues adversely to SEPTA and we find substantial evidence to support the PUC's decision, we will not remand but vacate the order denying SEPTA's exceptions and affirm the order

**4.** 45 U.S.C. § 546(b).

**5.** 45 U.S.C. § 581(c)(3).

**6.** 45 U.S.C. § 581(c)(5).

of the Commission imposing maintenance assessments on SEPTA for the Church Road Bridge.

## ORDER

AND NOW, this 3rd day of June, 1991, in regard to the order of the Pennsylvania Public Utility Commission at No. I–870067 dismissing SEPTA's exceptions, one is vacated and one is affirmed. The order refusing the Southeastern Pennsylvania Transportation Authority's exceptions to the Recommended Decision as untimely filed is vacated. The order imposing maintenance allocations upon the Southeastern Pennsylvania Transportation Authority is affirmed.